The Attorney General has considered your request for an official opinion wherein you request a review of the Coal Reclamation Act of 1979 (herein "CRA" or "Oklahoma Act"), S.B. 299 of the 37th Legislature (1st Session), Laws 1979, c 249, 45 O.S. 742 [45-742] et seq. (1979), said review mandated by the federal regulations implementing the Surface Mining Control and Reclamation Act of 1977 (herein "SMCRA" or "Federal Act"), Pub.L. 95-87. See 30 CFR, 700 et seq. 30 CFR, 731.14, states in relevant part: "The program shall demonstrate that the State has the capability of carrying out the provisions of the Act and this Chapter and achieving their purposes by providing a complete description of the system for implementing, administering and enforcing a State program including, at a minimum — "(c) A legal opinion from the Attorney General of the State or the chief legal officer of the State regulatory authority stating that the State has the legal authority or will have the legal authority through enactment of new laws and regulations which are in the process of enactment to implement, administer and enforce the program and to regulate exploration and surface coal mining and reclamation operations in accordance with the Act and consistent with this Chapter. The opinion shall include a section-by-section comparison of the State's laws and regulations and amendments which are in the process of enactment with the Act and this Chapter, explaining any differences and their legal effect . . . ." Manifestly, 731.14 (c) requires two things to be included in the legal opinion: (1) whether the State presently has the legal authority or will have the legal authority to implement, administer and enforce the program regulating coal exploration, surface coal mining and reclamation in a manner consistent with SMCRA and the relevant federal regulations, and (2) a section-by-section review of state law compared to SMCRA, identification of any differences in the state versus federal law and the legal effect caused by the differences. The Attorney General wishes to initially note the enormous burden imposed upon the legal resources of this State by the above quoted federal regulation. The federal requirement of issuing a legal opinion comparing section by section a comprehensive regulatory scheme established by law and regulations involves the careful comparative review of literally thousands of legal provisions. The time-consuming comparative review process has been diligently pursued since the request for this Opinion was first made in May of 1979 and is not, as yet, totally complete concerning the comparison of the voluminous federal and state regulations. Due to the State's Constitutional limitations on the length of time the Oklahoma Legislature is permitted to be in session, it was concluded to be appropriate to issue that portion of the Opinion request dealing with comparison of laws in order to provide the Legislature an opportunity to react to our findings this session, should they deem it necessary and appropriate. That portion of the Opinion request concerning comparison of federal and state regulations will be issued in a subsequent Opinion as soon as the review is complete. 30 CFR, 731.14, requires a format that is unusual to Oklahoma Attorney General opinions. We have elected to set forth the "side-by-side" comparison in an "Annex" to this opinion. The Annex, of course, reaches identical conclusions to those set forth in the text of this Opinion and, therefore, will not be published pursuant to 74 O.S. 20 [74-20] (1971). 30 CFR, 731.14(c), requires, in effect, an Opinion from this office whether the State "has the legal authority or will have the legal authority through enactment of new laws . . . which are in the process of enactment to implement, administer and enforce the program and to regulate coal exploration and surface coal mining" consistent with SMCRA and federal regulations pertaining thereto. It is noted that the Legislature, through enactment of S.B. 299, has added a comprehensive body of statutes that concern coal mining in Oklahoma. Section 62 of that Act expressly delays the effectiveness of those statutes until the State Program is either approved by the Secretary of the Interior or the sections are published by the Department in the Oklahoma Gazette. Therefore, the statutes enacted in S.B. 299 are not yet legally effective to enforce the program. See Attorney General's Opinion No. 79-177. The scope of this Opinion goes only to compare federal statutes to presently enacted state statutes in order to note any legal differences in the scope of the state versus federal provisions. We assume for the purpose of this Opinion that when the State Statutes become effective they have been validly enacted. The following provisions in the Oklahoma Act have been found consistent with their comparable provisions in the Federal Act.: CRA 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 16 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 61, 45 O.S.Supp. 1978 744, 746, 747, 748, 749, 750, 751, 752, 753, 755, 757, 760 and 902, and 45 O.S. 792 [45-792] (1979). These sections were compared to the federal provisions established in SMCRA and were found either verbatim in substance or otherwise legally consistent in force and effect. The following represents a list of all the sections in the Federal Act for which there has not been enacted a comparable provision in CRA: SMCRA 301-309, 401-413, 503-505, proviso in 506(d) (2), 510(b)(5), 512(e), proviso in 515(c)(4)(E), 515(c)(6), proviso in 515(d)(1), 515(e), 515(f), 517(a), 518(i), 521(b), 521(d), 522(a)(4), 522(b), 523(a), 523(b), 523(d), 527, 528(2), 529, 601, 701(1) (3) (4) (5) (6) (7) (9) (10) (11) (12) (16) (19) (21) (23) (24) (25) (26) (30) (31) (32), 702(a), 702(b), 702(d), 703, 705, 706, 708, 709, 710, 711, 712, 713, 714, 715, 716, 718, 801-806, 901-908. However, these federal provisions have been determined to be nonessential to the development of our State mining program. Included hereinafter is a discussion of possible consistency problems between the SMCRA and the comparable provisions of CRA and of other matters relating to the legal construction of certain CRA provisions. A consistency problem arises when 41 CRA, 45 O.S. 774 [45-774] (1979), is compared to 520, SMRCA. Both provisions relate to the right of a private party to initiate proceedings to force compliance with the respective Acts. 520(a) provides that any person "adversely affected" may commence a civil action on his own behalf to compel compliance with the Act against any governmental instrumentality or agency alleged to be in violation of the Act or any rule, regulation, order or permit issued pursuant thereto or against any other person alleged to be in such violation. With respect to the limitations on this particular type of suit, 520(b) (1) requires 60 days notice be given the Secretary, the State, and to any alleged violator before the action may be commenced. 520(b) (1) further provides that no such action may be commenced if the Secretary or the State is diligently prosecuting a civil action in court to require compliance with the Act or any rule, regulation, order or permit although, in such case, any person may intervene as a matter of right. In addition, 520(a) allows a person "adversely affected" to commence an action to force compliance against the Secretary of the Interior or the State Regulatory Authority where there is alleged a failure by the Secretary or State Authority to perform any act or duty under the Act which is not discretionary. With respect to the limitation on this particular suit, 520(b) (2) provides that no such action may be commenced prior to sixty days after written notice has been given the Secretary or the Authority except that suit may be brought immediately after such notice where the failure to perform the act or duty poses an imminent threat to the plaintiff's health or safety or would immediately affect a legal interest of the plaintiff. 520(a) further provides that the United States District Courts shall have unconditional jurisdiction over the actions commenced pursuant to sub-section (a). With respect to 520(a) and (b), CRA has comparable provisions which are verbatim in substance and therefore consistent therewith. See 41(A) and (B), CRA. 520, SMCRA, next contains a venue provision providing that the civil actions authorized under sub-section (a) may be brought only in the federal judicial district in which the mining operation complained of is located. See 520(c)(1). 520(c)(2) further states that, in such an action, the Secretary or the State Regulatory Authority may intervene as a matter of right if not a party. However, in response to, or as the counterpart of, 520(c), CRA provides the following in 41(C): "Any action respecting a violation of this act or the regulations thereunder may be brought only pursuant to the Administrative Procedures Act and only in the judicial district in which the surface coal mining operation complained of is located. "In such action under this section, the Department, if not a party, may intervene as a matter of right." (Emphasis added) In construing this provision, reference should be made to the longstanding rule of statutory construction that a legislative enactment must be interpreted in accordance with its plain and ordinary meaning according to the import of the language used therein. See In re. Certification of Question of State Law, Okl., 560 P.2d 195 (1977), and Nikkel v. Stifel, Nicolaus Co., Inc., Okl., 542 P.2d 1305
(1975). In so doing, it is evident in the above requirement, that every action regarding a violation of the Oklahoma Act be brought "only" pursuant to the Oklahoma Administrative Procedures Act (75 O.S. 301 [75-301] et seq. (1971)), contemplates and would, therefore, apparently require the complaining party to pursue relief from the Oklahoma Regulatory Authority through its administrative quasi-judicial procedures before any judicial relief or review for a court could be sought. Section 41(c), by its terms, reasonably appears to reference an administrative remedy and exhaustion of such a remedy is a jurisdictional prerequisite to resort to the courts under Oklahoma law. See Martin v. Harrah Independent School Dist., Okl., 543 P.2d 1370 (1975), and Hughes v. City of Woodward, Okl., 457 P.2d 787 (1969). However, from an examination of 52n (a) and the other provisions of that section, it is most evident that the Federal Act contemplates and establishes the right of an affected party to proceed directly to court to compel compliance with the Act, subject only to the requirements and limitations prescribed in 520(b), without the necessity of first pursuing or ever attempting relief through ad ministrative channels. This intent ingrained in 520 to allow citizen suits to be filed as original actions in the court system without requiring exhaustion of administrative remedies is further evidenced in 526, SMCRA, relating to judicial review of administrative decisions and orders. Subsection (e) of that section, dealing with the State Regulatory Authority, provides as follows: "Action of the State Regulatory authority pursuant to an approved State program shall be subject to judicial review by a court of competent jurisdiction in accordance with State law, but the availability of such review shall not be construed to limit the operation of the rights established in section 520 except as provided therein." Accordingly, in view of the legislative reference to the Oklahoma Administrative Procedures Act and the requirements that the import of such reference generates, it must be concluded that 41(C) is inconsistent with 41(A) and (B) of the Oklahoma Act and, moreover, inconsistent with 520, SMCRA, in that the civil action remedy clearly mandated by 520 does not appear to be preserved in 41. Regarding the remaining subsections of 520, those being (d), (e) and (f), CRA contains comparable provisions which are verbatim in substance and, therefore, consistent. See 41(D), (E) and (F), CRA. As an additional note, 520(c)(1) and (f), SMCRA, use the term "judicial district" in providing where the civil action referred to in (c) and (f) may be commenced. It is apparent that the term is used in these sub-sections because a federal judicial district is the commonly observed venue unit in the federal court system. As a result, the use of this term in 41(C) and (F), CRA, is ambiguous since the "county" is the commonly recognized and applied venue unit within the Oklahoma court system. See 12 O.S. 131 [12-131] et seq., (1971). However, this does not affect the consistency of these provisions. Another potential problem worthy of mention involves the definition and use in SMCRA and CRA of the terms "person" and "operator". The term "person" is defined in SMCRA to mean an "individual, partnership, association, society, joint stock company, firm, company, corporation, or other business organization." See 701(19). Such term is not specially defined in CRA. The term "operator" is identically defined in both Acts to mean any person, partnership, firm or corporation who removes or intends to remove more than 250 tons from the earth within 12 consecutive months in any one location. See 701(13), SMCRA, and 3(26), CRA, 45 O.S. 742.2 [45-742.2](26) (1979). The significance of the above becomes apparent when one compares the general permit provisions of the two Acts. 502(a) and 506(a), SMCRA, in substance, prohibit any person from engaging in surface coal mining without first obtaining a coal mining permit. Oklahoma's comparable provisions, those being 4(A) and (B), CRA, 45 O.S. 745.1 [45-745.1](A) (1979) and (B), are consistent with 502 and 506 with the exception that the former prohibits any operator from conducting surface coal mining without a permit from the Department of Mines. As a result of this difference in terminology, it would appear initially that 4, CRA, is less inclusive in scope in that it would allow persons as defined in 701(19) who do not meet the criteria for operator as established in 701(13) and 3(26), to engage in surface mining without a permit. However, the use of the terms "person" and "operator" as above-discussed and as used elsewhere in the respective Acts should be construed in view of the exclusions or exemptions provided for in said Acts. 528, SMCRA, provides that the Federal Act shall not apply to: "(1) the extraction of coal by a landowner for his own noncommercial use from land owned or leased by him; "(2) the extraction of coal for commercial purposes where the surface mining operation affects two acres or less; and "(3) the extraction of coal as an incidental part of Federal, State or local government-financed highway or other construction under regulations established by the regulatory authority." The comparable provision in CRA is identical except that exclusion or exemption number 2, as stated above, is not included therein. See 4(F). Therefore, it is apparent that neither Act, including the provisions contained in each prohibiting mining without a permit, apply to the situation where a landowner extracts coal for his own noncommercial use from land owned or leased by him or to the extraction of coal as a part of federal, state or local government financed highway construction, etc. Additionally, it is apparent that SMCRA, and its permit provisions, do not apply to the extraction of coal for commercial purposes where the operation affects two acres or less. And, while CRA does not contain a comparable two acre exemption, 4(A) and (B) and 3(26), as before discussed, indicate that no permit is required (and thus CRA does not apply) where an operation will not remove more than 250 tons from the earth during a 12-month period. In light thereof, the variance in the scope of coverage of the two Acts that results from comparing 502 and 506, SMCRA, with 4, CRA, in isolation from the remainder of the respective Acts becomes somewhat minimized when these specific provisions are read in conjunction with the exclusions or exemptions provided for in each Act. However, to determine whether the difference in scope (2 acres or less disturbed as opposed to removing 250 tons or less from the earth in a year) is material, requires the application of knowledge and expertise which is beyond the scope of a legal opinion. Another potential problem concerns 515(c), SMCRA, and 29(B), CRA, 45 O.S. 756 [45-756](B) (1979), both of which relate to the granting of a permit where an industrial, commercial, agricultural, residential or public facility use is proposed for the post-mining use of the affected land. 515(c) (6) provides that all permits granted under 515(c) shall be reviewed not more than three years from the date of issuance, unless the operator affirmatively demonstrates that the proposed development is proceeding in accordance with the approved schedule and reclamation plan. The purpose of (c) (6) is apparently to provide for an initial permit review within three years in order to determine whether an operator, planning to make such post-mining use of the land, is fully complying with the provisions of the Act, his permit, and plan and schedule of reclamation. CRA did not provide a similar provision expressly requiring review of such permits within three years. The general permit provision in CRA provides merely that all permits shall issue for a term not to exceed five years. See 5, CRA, 45 O.S. 745.2 [45-745.2] (1979). However, the failure to adopt a provision comparable to 515(c) (6) may not be material in light of 9(A), CRA, 45 O.S. 745.6 [45-745.6] (1979), which provides for bonding (and the review thereof) in one-year increments; 33, CRA, 45 O.S. 766 [45-766] (1979), requiring the Department of Mines to make one complete inspection per calendar quarter of every coal mining operation; 35, CRA, 45 O.S. 768 [45-768] (1979), allowing any person adversely affected to obtain review of the adequacy or appropriateness of the Department's inspections and/or citations or cessation orders; and the numerous other safeguards the CRA adopted to insure and compel the operator's full compliance with the Act, his permit, and all the reclamation requirements associated with his operation. Another provision of the Oklahoma Act in need of brief discussion involves 9(C), CRA, 45 O.S. 745.6 [45-745.6](C) (1979), dealing with performance bonds. 9(C) provides that the penalty of the bond or the amount of cash or securities (received in lieu of such bond), "as provided in subsection E of this section," shall be increased or reduced as affected land acreages are increased or decreased or when the cost of future reclamation changes. However, subsection (E) relates only to the authority of the Department of Mines to accept the bond of the applicant without separate surety and does not contain any provision for the penal sum of bonds while subsection (B) does so provide for such penalty amounts. Therefore, the reference in 9(C) to subsection (E) is apparently an inadvertent substitution of "E" for "B". Another provision warranting brief mention is 20(A), CRA, 45 O.S. 745.17 [45-745.17](A) (1979). This section is the counterpart to 507 (e), SMCRA, and is verbatim in substance with the latter and, therefore, consistent. It provides that each permit applicant shall file a copy of his application "with the recorder at the courthouse" of the county or "an appropriate public office approved by the Department" where the mining operation is proposed to take place. If the Department of Mines chooses to specify the public office or officer to receive the permit applications, no question will exist as to how compliance with this public notice requirement can be fulfilled. However, in the absence of such specification, the person or office to receive the same is in question since there are no county "recorders" per se in Oklahoma. In issuing this opinion, the Attorney General is cognizant of the recent decision of the United States District Court for the Western District of Virginia which passed on the constitutionality of several aspects of the Federal Act. See Virginia Surface Mining and Reclamation Assoc., Inc., v. Cecil D. Andrus, _____ F. Supp. _____ (W.D. Vir. 1980). As a part of its opinion, the court found, after considering the cumulative effects of the evidence before it, that SMCRA operates to displace the states' freedom to structure integral operations in areas of traditional governmental functions and is in contravention of the Tenth Amendment. The court determined that the Plaintiffs therein had shown a significant impact on the governmental bodies involved through forced relinquishment of state control of land use planning, through loss of state control of its economy, and through economic harm from expenditure of state funds to implement the act, etc. The court concluded that SMCRA has substantially restructured traditional ways in which various levels of state government have arranged their affairs. As a result, we feel the decision places in some doubt the necessity of issuing this Opinion. Furthermore, the above case determined several provisions of the Federal Act unconstitutional. As the court's order reflects, the court was of the opinion that 515(d) and (e) and 522, SMCRA, which require restoration of steep slopes to approximate original contour are unconstitutional as applied to the Virginia coal mining situation as a taking of private property without just compensation in violation of the Fifth Amendment. The court further determined that 518, 521(a)(1) and 525, SMCRA, which provide for summary issuance of cessation orders and civil penalties, are unconstitutional as a deprivation of procedural due process guaranteed under the Fifth Amendment. In light thereof, the constitutionality of the provisions in CRA which are comparable to and consistent with these federal sections is subject to question. (These Oklahoma provisions are as follows: CRA, 36 45 O.S. 769 [45-769] (1979), 42 45 O.S. 775 [45-775] (1979), 48 45 O.S. 781 [45-781] (1979), 49 45 O.S. 782 [45-782] (1979), 50 45 O.S. 783 [45-783] (1979), 53 45 O.S. 786 [45-786] [45-786] (1979), and 45 O.S. 755 [45-755] (1978).) However, it should be noted that any effect the above case may have on either the Federal or Oklahoma Act is not material to our inquiry herein, which is to compare the state and federal authority concerning surface mining and reclamation. In view of the above, it is the official opinion of the Attorney General that the foregoing comparison of laws reveals the following: Section 41, Laws 1979, c. 249, 45
O.S. 774 [45-774] (1979), is inconsistent with 520, Pub.L. 95-87, in that subsection (C) of 41, by its terms, appears to negate the right of an adversely affected person to commence a civil action to compel compliance with the Act without first exhausting administrative remedies as provided for in 520. Sections 4(A) and 4(B), Laws 1979, c.249, 45 O.S. 745.1 [45-745.1](A) and 45 O.S. 745.1 [45-745.1](B) (1979), relating generally to the necessity of obtaining a mining permit, are inconsistent in legal requirement to 502(a) and 506(a), Pub.L. 95-87, the materiality of which is a question of fact and, therefore, beyond the scope of an Attorney General's opinion. 515(c)(6), Pub.L. 95-87, relating to the review of certain mining permits, has no comparable provision in Laws 1979, c. 249. However, such absence of a comparable provision appears insignificant in light of the numerous other sections in Laws 1979, c. 249, insuring, in effect, similar permit review. The remainder of the provisions in the Coal Reclamation Act of 1979.7 Laws 1979, c. 249, 45 O.S. 742 [45-742] et seq., (1979), are consistent with those of the Surface Mining Control and Reclamation Act of 1977, Pub.L. 95-87, and, when effective, will provide statutory authority consistent in scope and legal effect to that under the Federal Act. (CHARLES S. ROGERS) (BRENT S. HAYNIE) (ksg)